IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE M. PAWLOSKI, | Civ-S-05-00724 DFL JFM |
| Plaintiff, | Memorandum of Opinion and Order |
| v. | |
| ANTHONY J. PRINCIPI, SECRETARY, DEPARTMENT OF VETERANS' AFFAIRS, UNITED STATES OF AMERICA, | |
| Defendant. | |

Diane Pawloski, a nurse at a local Veteran's Administration facility, brings this suit against the Veterans' Administration for sexual harassment and retaliation. Before the court is defendant's motion for summary judgment. The court GRANTS defendant's motion as to the sexual harassment claim and DENIES the motion as to the retaliation claim.

## I. Facts

The following facts are undisputed unless otherwise noted. Diane Pawloski is a nurse at the VA. From March until June of

2003, she dated Sergeant James Hicks, then a VA police officer assigned to the same facility. Shortly after plaintiff ended the relationship, Hicks allegedly began sexually harassing her – staring at her, cursing at her, threatening her, and exposing himself to her. The last alleged interaction between Hicks and plaintiff was on September 19, 2003, when Hicks allegedly told her to "remember who has the gun."

On September 23, 2003, plaintiff spoke with EEO counselor Marlene Lewis. She asked Lewis general questions about the process of making a sexual harassment complaint, but did not actually make a complaint. Rather, she told Lewis her questions were hypothetical. Lewis encouraged plaintiff to come back if she wanted to make a complaint.

On October 15, 2003, plaintiff avers, a coworker named Roy Gras called her at home and told her that Hicks was spreading rumors about her. The next day, plaintiff contacted VA Police Chief Reginald Winbush and told him she wanted to file charges against Hicks.

On October 17, plaintiff reported Hicks's alleged harassment to Chief Nurse Donna Iatarola. Iatarola told her to pursue her complaint through Chief Winbush.

On October 20, plaintiff again met with Winbush, who informed her that Hicks had complained that she had sexually harassed him. On October 21, plaintiff faxed Winbush a written

complaint about Hicks.  The next day, October 22, Winbush forwarded the complaint to EEO counselor Marlene Lewis.

On October 24, plaintiff informed her direct supervisor, Valerie DeLise, of her allegations against Hicks.  She complained to DeLise that nobody was doing anything about the situation.  DeLise told her to tell someone at EEO.

On October 25, plaintiff called the VA EEOC office, but the answering machine informed her that the office was moving and would be closed until October 27.  On October 28, plaintiff filed a complaint against Hicks at the Sacramento County Sheriff's Department.  She also submitted a written complaint to DeLise, who again told her to contact someone at EEO.  DeLise then contacted Helen Jew, an EEO officer, and notified her of plaintiff's complaint.  Plaintiff and Hicks were placed on administrative leave that day.

An Administrative Board Investigation (ABI) was convened on November 3, 2003, which began investigating plaintiff and Hicks's cross complaints.

Meanwhile, on November 5, plaintiff was permitted to return to work and assured that Hicks would be transferred to another facility.  On November 12, however, plaintiff spotted Hicks on the property.  The same day, she informed EEO officer Helen Jew that she had seen Hicks on the property.  She also told Jew about her allegations against Hicks.  This was the first time

3

plaintiff had directly complained to an EEO officer about Hicks's alleged harassment.

The ABI interviewed witnesses, including plaintiff, Hicks, Winbush, DeLise and Iatarola.  Among other things, the ABI recommended that Hicks be removed as a police supervisor and that plaintiff receive closer supervision.  As a result of the ABI's findings, the VA moved plaintiff's office closer to her supervisor's and fired Hicks.

Later in November, plaintiff submitted a request for promotion to Nurse III.  This triggered an evaluation of her work performance by her first-line supervisor, DeLise, and her second-line supervisor, Iatarola.  DeLise wrote a very positive evaluation, but Iatarola told her she thought plaintiff unqualified for promotion and asked DeLise to revise the evaluation four times.  DeLise had never been asked to rewrite an evaluation before.  Plaintiff alleges that Iatarola's actions introduced a negative quality to the evaluation.  Defendant contends that the final evaluation, including Iatarola's portion, were wholly positive.

Once the evaluation was finished, Iatarola contacted Marilyn Kerhoff, Chair of the Nurse Professional Standards Board ("Board"), the body that makes promotion decisions.  Iatarola urged Kerhhoff to "look really closely at the comments that I made in my section before you go into that board meeting."

Although Kerkhoff avers that Iatarola's call did not influence the Board's decision, the Board went on to find plaintiff unqualified and denied her the promotion. This decision was affirmed by the VA Central Office Nurse Professional Standards Board in Washington, D.C. ("Central Board").

In April, 2005, plaintiff filed this lawsuit against the Secretary of the Department of Veterans Affairs for harassment and retaliation under Title VII. Defendant filed this motion for summary judgment in October 2006.

## II. Harassment Claim

Plaintiff's first claim is for sexual harassment under Title VII. As discussed below, the court GRANTS summary judgment for defendant on this claim.

### A. Exhaustion

To bring an employment discrimination action under Title VII, an aggrieved federal employee "must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). This counseling is intended to create an opportunity "to informally resolve the matter." Id. § 1614.105(a); see also Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985) ("Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably

necessary."). Unlike courts in some other jurisdictions and the EEOC itself, which hold that complaining to a supervisor who is not an EEO counselor may satisfy the regulation,[1] the Ninth Circuit holds that only contact with an EEO counselor suffices. Johnson v. Henderson, 314 F.3d 409, 415 (9th Cir. 2002).

Defendant persuasively argues that plaintiff did not make the required contact with an EEO counselor within 45 days. The last incident of alleged harassment of which plaintiff has produced admissible evidence occurred on September 19, 2003.[2] Although she complained to supervisors within 45 days, she did not report the harassment to an EEO counselor until November 12, well over 45 days later.[3] Thus, under the Ninth Circuit's

---

[1] E.g., Lloyd v. Chao, 240 F.supp.2d 1 (D.D.C. 2002); Guerra v. Runyon, App. No. 01944190, 1994 WL 744965 (E.E.O.C. Nov. 9, 1994).

[2] Plaintiff alleges that the last incident of harassment occurred on October 15, when a fellow employee named Roy Gras called her at home to say that Hicks was spreading rumors about her. However, plaintiff has not provided a declaration from Gras. Therefore, her statement as to what Gras allegedly heard is hearsay and cannot be considered. See Blair Foods, Inc. v. Ranchers Cotton Oil, 610 F.2d 665, 667 (9th Cir. 1980). She does not claim that Gras' call was itself an act of harassment by Gras. Such an assertion would be implausible.

[3] Plaintiff did have a meeting on September 23 with EEO counselor Marlene Lewis. But at that meeting plaintiff asked only hypothetical questions about the complaint process and declined to make a complaint. The requirement that an aggrieved employee seek EEO counseling is not satisfied by asking hypothetical questions of an EEO counselor. See Bailey v. U.S. Postal Service, 208 F.3d 652, 654-55 (8th Cir. 2000); Steinert

interpretation of the 45-day rule, plaintiff missed the deadline.

Plaintiff argues that she made adequate "indirect" contact with an EEO counselor because her supervisor, Valerie DeLise, relayed her complaint to EEO counselor Helen Jew within 45 days. Her argument might be persuasive in a jurisdiction where contact with a supervisor "logically connected to the EEO process" has been held to satisfy § 1614.105(a). Briggs v. Henderson, 34 F.Supp.2d 785, 786 (D. Conn. 1999) (citations omitted). But under the Ninth Circuit's interpretation of the regulation, only direct contact with an EEO counselor appears to suffice, because only through direct contact can the EEO counselor "attempt informal resolution of the dispute prior to the filing of a complaint." Leorna v. United States Dep't of State, 105 F.3d 548, 551 n.3 (9th Cir. 1996). Moreover, here plaintiff had been in direct contact with the EEO counselor but had been unprepared and unwilling to make a complaint or to go beyond asking hypothetical questions. The strict interpretation of the rule respects her apparent decision to keep the matter private. The premise of the 45-day requirement is that the aggrieved

---

v. Gober, 32 F.Supp.2d 842, 845-46 (D.S.C. 1998) ("[T]he cases have held uniformly that in making . . . contact, the aggrieved employee must allege acts of *discrimination* and manifest a desire to begin the EEO process.") (emphasis original and citation omitted).

employee must take the first step in bringing harassment allegations forward and that it is not the place of the EEO counselor to institute a complaint on behalf of someone who does not want to become involved in the complaint process. One can well imagine a different rule that would shift the responsibility to the EEO counselor once certain facts were made known to the counselor from any source. Such a rule would have certain benefits in some circumstances but also might detract from the efficacy of the 45-day rule. It would also shift control of the process away from the employee.

In light of the language of the regulation as interpreted by the Ninth Circuit, plaintiff missed the deadline, and her sexual harassment claim fails.[4]

---

[4] Plaintiff does not argue that her failure to meet the 45-day deadline is excused by equitable tolling or estoppel. It is undisputed that plaintiff was on notice of the 45-day deadline, so she would not be entitled to equitable tolling. See Johnson, 314 F.3d at 414. Neither would she be entitled to equitable estoppel, which is available only where "the defendant takes active steps to prevent the plaintiff from suing in time." Id. (internal quotation marks and citation omitted). The evidence here does not support the conclusion that defendant sought to prevent plaintiff from seeking EEO counseling within 45 days. Indeed, on October 28, 2003 – less than 45 days after the last incident of harassment – DeLise advised plaintiff to contact someone at EEO.

B. <u>Defendant's Liability on the Merits</u>

Defendant argues that even if plaintiff's claim were timely, it would not be liable for Hicks's alleged sexual harassment because he was not plaintiff's supervisor.

Under Title VII, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." <u>Farragher v. City of Boca Raton</u>, 524 U.S. 775, 807 (1998). An employer is strictly liable if "the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." <u>Id.</u> at 808. In contrast, "[i]f . . . the harasser is merely a coworker, the plaintiff must prove that . . . the employer knew or should have known of the harassment but did not take adequate steps to address it." <u>McGinest v. GTE Service Corp.</u>, 360 F.3d 1103, 1119 (9th Cir. 2004).

Plaintiff asserts that Hicks acted in a supervisory capacity over her because: (a) he was a supervisor in the VA police department, (b) he told her what questions he wanted her to ask and which candidates should be chosen when she served on an interview panel to select VA police, and (c) he allegedly told her "I will take you down and get your job."

9

Plaintiff's first assertion is irrelevant, because she must establish not only that Hicks supervised somebody, but that he had "immediate (or successively higher) authority over [her]." Id. (quoting Faragher, 524 U.S. at 806) (internal quotation marks omitted). That Hicks may have supervised police officers does not demonstrate that he supervised plaintiff.

In her declaration, plaintiff avers that Hicks "did give me and the other nurses orders from time to time" and that "[w]e were expected to follow those orders." In her declaration, however, Chief Nurse Iatarola states that Hicks "had absolutely no authority to supervise nurses in my service." She notes that in an emergency, "all VA employees are expected to take direction from safety personnel which could include VA police officers." Chief Winbush likewise declares that "Hicks did not supervise Ms. plaintiff nor was he authorized to hire, fire, discipline or promote, or participate in or recommend such decisions with regard to Ms. plaintiff." He also avers that "Hicks was without authority to make demands upon selection panel members . . . , [and that] [i]f Hicks did attempt to direct Ms. Pawloski's actions and Ms. Pawloski refused such direction, Mr. Hicks would have had no remedy."

Plaintiff's vague assertion that Hicks sometimes gave her orders that she was expected to follow is inadequate to create a genuine issue of material fact as to whether he was her

supervisor.  It is clear that he was not.  Only in emergency situations was he authorized to give her directions.  If he sometimes told her what to do in other circumstances, he did so without official authority.  Nor does an unfounded threat to take someone's job make someone a supervisor.  Accordingly, because Hicks was not plaintiff's supervisor, defendant may be liable for Hicks's alleged misconduct only if it "knew or should have known of the harassment but did not take adequate steps to address it."  McGinest, 360 F.3d at 1119.

Here, defendant's response was adequate as a matter of law. "Where . . . the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation."  Swenson v. Potter, 271 F.3d 1184, 1197 (9th Cir. 2001).  Although plaintiff points to certain possible, minor flaws in the investigation, it is undisputed that once plaintiff reported the alleged harassment, defendant promptly initiated an investigation, separated plaintiff and Hicks, and ultimately fired Hicks.  Under Swenson, this is enough to shield defendant from liability.  Accordingly, the court holds that even if plaintiff had exhausted her sexual

harassment claim, defendant would be entitled to the Farragher defense.[5]

### III. Retaliation Claim

Plaintiff claims that defendant retaliated against her for complaining about Hicks's alleged harassment by: (1) moving her to a new office, (2) "hyper-scrutinizing" her work, (3) not talking to her, (4) warning her that she might be fired if she committed misconduct, and (5) denying her a promotion from Nurse II to Nurse III.  Defendant does not contend that her retaliation claim is untimely or barred by a failure to exhaust.

To state a prima facie case for retaliation under Title VII, a plaintiff must show that "(1) she engaged in protected activity; (2) the [defendant] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." Annett v. Univ. of Kansas, 371 F.3d 1233, 1237 (10th Cir. 2004).  Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate nondiscriminatory reason for the adverse employment action at

---

[5] Defendant submits a report from a human resources expert, Craig Pratt, concluding that defendant's response to plaintiff's complaints was adequate.  Plaintiff argues that Pratt's report should be excluded as improperly infringing on the role of the court.  Expert testimony concerning the proper response of an employer to harassment complaints is admissible.  But even if it were not, the court would reach the same conclusion independently.

issue." Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). If the defendant proffers such a reason, the burden shifts back to the plaintiff to provide evidence that the defendant's proffered nondiscriminatory reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. (citations and internal quotation marks omitted). "A fact-finder may infer the ultimate fact of retaliation without proof of a discriminatory reason if it rejects a proffered nondiscriminatory reason as unbelievable." Id. (citation omitted).

It is undisputed that plaintiff engaged in protected activity when she complained of Hicks's alleged harassment. It is also undisputed that failure to promote is an adverse employment action.[6] See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (citation omitted). Close temporal proximity between the protected action and alleged retaliation suffices to establish the causal connection required to make out a prima facie case. Annett, 371 F.3d at 1239-40 (citation

---

[6] Therefore, the court does not consider whether the other alleged acts of retaliation – i.e., moving plaintiff's office, carefully monitoring her work, giving her the cold shoulder, and warning her against future misconduct – amount to adverse employment actions.

omitted).  It is undisputed that the decision not to promote plaintiff closely followed her complaints about Hicks. Moreover, plaintiff avers that Iatarola told her she thought plaintiff's harassment allegations were false, and that she [Iatarola] had gotten in trouble for failing to handle them properly.  These allegations are more than adequate to state a prima facie case.

Defendant's asserted nondiscriminatory reason for denying plaintiff the promotion is that the Board impartially determined she was unqualified, and that its decision was affirmed by the Central Board in Washington, D.C.  Defendant contends that because no one on either board knew that plaintiff had filed a complaint, the boards' decisions could not have been retaliatory.

Plaintiff counters that the Board's decision, and the Central Board's affirmance of that decision, were affected by Nurse Iatarola's alleged retaliatory tampering with plaintiff's proficiency report and improper contact with Board Chair Marilyn Kerkhoff.  According to Valerie DeLise, plaintiff's direct supervisor, Iatarola said that she did not think plaintiff was qualified for the promotion and took the unprecedented step of asking DeLise to rewrite plaintiff's performance evaluation four times.  DeLise, who did believe plaintiff qualified, found this so troubling that she raised concerns with Iatarola that

plaintiff was not being treated fairly.  Iatarola also called Kerkhoff and told her, "I want you to look really closely at the comments that I made in my section [of plaintiff's performance evaluation] before you go into that board meeting."  Plaintiff alleges that Iatarola's statement conveyed a strong negative message to the Board, and that it was made to retaliate against her for having reported Hicks's alleged sexual harassment.

    Defendant proffers a declaration by Kerkhoff stating that Iatarola's contact with her had no effect on the Board's decision, and that she did not know plaintiff had filed a harassment complaint when the Board made its decision.  In light of these assertions, defendant argues, the Board's decision not to promote plaintiff could not have been retaliatory.

    Although much remains unexplained, there is sufficient evidence in the record for a reasonable jury to find that Iatarola tampered with the Board's review process to retaliate against plaintiff, and that this tampering affected the Board's decision.  Despite a very positive performance evaluation,[7] the

---

[7] Plaintiff's contention that Iatarola caused DeLise to place negative comments in her performance evaluation is contradicted by the body of the evaluation itself, which is extremely positive.  It rates plaintiff as outstanding or highly satisfactory in every performance area.  The short section containing Iatarola's own comments is also positive, at least superficially.  It may take on a negative aspect, however, when coupled with an admonition to look at it "very closely":

Board found that plaintiff lacked each of the many qualifications required for promotion. Because this finding is so at odds with the performance review upon which it ostensibly was based, a reasonable jury could infer that Iatarola's contact with Kerkhoff sent a negative message that played a role in the Board's adverse decision.

Defendant argues that the nonretaliatory nature of the decision not to promote plaintiff is demonstrated by the Central Board's review and affirmance of the Board's decision. But defendant provides no information about the standard under which

---

> Diane has contributed greatly to the success of the recruitment program that was set up by her supervisor. She quickly grasped the process and has had great outcomes in helping to keep new and vice positions filled. She has researched the community practices to look at benefits as well as pay and will present this to the leadership group. Diane is in the beginning stages of setting up a Retention Committee. She is growing in her abilities to lead this team. This could lead to a significant contribution as it moves through our system. She is strengthening her problem solving and communication skills to lead a system wide team. She is encouraged to build the links between the individuals and the sites. This will lead to very positive outcomes. She is enthusiastic and wants to succeed. She took an active role in the Employee Appreciation Day with a very successful and appreciated outcome.

Iatarola's comments suggesting that plaintiff was "growing" and "strengthening" certain abilities and skills might have been read to imply that she did not yet possess them to the degree required for promotion.

the Central Board conducted that review.  Therefore, defendant fails to establish that the decision not to promote plaintiff was insulated from any retaliatory tampering.

Accordingly, defendant's motion for summary judgment is DENIED as to the retaliation claim.

IT IS SO ORDERED.

Dated:  May 1, 2007

                                             /s/ David F. Levi_____
DAVID F. LEVI
United States District Judge